UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TODD E. OAKES, SR.,

                             Plaintiff,

v.                                                     5:13-CV-01374

                                                         (LEK/TWD)

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| AMDURSKY, PELKY,<br>FENNELL & WALLEN, PC<br>*Counsel for Plaintiff*<br>26 East Oneida Street<br>Oswego, New York, 13126 | GREGORY R. GILBERT, ESQ. |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney for the<br> Northern District of New York<br>*Counsel for Defendant*<br>Room 218<br>James T. Foley U.S. Courthouse<br>Albany, New York 12207 | ELIZABETH ROTHSTEIN, ESQ.<br>Special Assistant United States Attorney |
| OFFICE OF GENERAL COUNSEL<br>Social Security Administration<br>26 Federal Plaza, Room 3904<br>New York, New York 10278 | STEPHEN P. CONTE, ESQ.<br>Chief Counsel, Region II |

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

    This matter was referred to the undersigned for report and recommendation by the

Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C.

§ 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

The Plaintiff was born on April 1, 1969. (Administrative Transcript at 138, 174, 204.[1]) Plaintiff completed the 10th grade, obtained a GED, and took carpentry at BOCES. (T. at 34.) He operates a car occasionally, and has worked as a bus aide, candlemaker, janitor, lineman, maintenance worker, sewer worker, and stock person. (T. at 35-37, 49, 180.) Plaintiff alleges disability due to a bulging disc, shoulder and knee injuries, asthma, migraines, acid reflux, one kidney, and no spleen. (T. at 37-47, 179.)

Plaintiff's protective application for disability benefits was filed on April 3, 2008. (T. at 204.) His disability onset date was amended to March 12, 2005. (T. at 64, 170.) The application was initially denied on July 30, 2008. (T. at 66.) Plaintiff requested a hearing which was held on December 18, 2009, before Administrative Law Judge ("ALJ") Rebecca LaRiccia, who denied the application in a decision dated August 3, 2010. (T. at 15-23, 27-65.) On September 26, 2013, ALJ LaRiccia's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (T. at 1-4.) Plaintiff commenced this action on November 5, 2013. (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T" herein.

2

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("S.S.A.") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2013). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.) "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.* (quoting *Perry*, 77 F.3d at 46).

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248

(N.D.N.Y. 2010);[2] *see Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be 'more than a mere scintilla' of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.  THE ALJ'S DECISION

The ALJ first determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged disability onset date of March 12, 2005, through the last date insured of September 30, 2009. (T at 17.) The ALJ found at step two of the sequential evaluation that Plaintiff had the "severe" impairments of degenerative joint disease, status post

---

[2] On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Commissioner of Social Security*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55322 (N.D.N.Y. May 17, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Ross v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

multiple knee surgeries, discogenic and degenerative changes of the lumbar spine, asthma, migraines, and gastroesophageal disease. (T. at 17-18.) At step three, the ALJ determined that Plaintiff's severe impairments did not meet or medically equal the criteria of an impairment contained in the Listing of Impairments. (T. at 18.)

The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that he could occasionally climb, stoop, crouch, and balance, but could not kneel or crawl. He had to avoid concentrated exposure to pulmonary irritants and workplace hazards, such as heights and dangerous machinery, and had to be allowed to sit and stand at will. (T. at 18.) At the fourth step, the ALJ concluded that Plaintiff could not perform any of his past relevant work. (T. at 21-22.) At the fifth step, ALJ Smith considered all of Plaintiff's limitations and obtained the testimony of a vocational expert to reach the determination that Plaintiff could make an adjustment to other work existing in significant numbers in the national economy. (T. at 22-23.) The ALJ then concluded that Plaintiff was not disabled, and denied his claims for disability benefits. (T. at 23.)

## IV. THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred in failing to consider Plaintiff's nonexertional impairment caused by migraine headaches, and its effect on his ability to perform a range of sedentary work, in determining the RFC. (Dkt. No. 13 at 6.) Plaintiff also argues that the ALJ erred in relying on the response of the vocational expert to an improper hypothetical question. *Id.* at 6-7. Defendant contends that the ALJ's RFC finding was determined by applying the correct legal standards and is supported by substantial evidence including the reliance on the vocational expert testimony; and therefore the decision should be affirmed. (Dkt. No. 14.)

## V. DISCUSSION

### A. The RFC Determination

A claimant's RFC is the most the individual can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. 404.1546(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.* at § 404.1545(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. §§ 404.1569a(a), 404.1569a(b), and 416.969a(a). Nonexertional limitations include pain and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id*.

"The RFC can only be established when there is substantial evidence of each physical

7

requirement listed in the regulations." *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat,* 717 F. Supp. 2d at 267 (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

### B. Plaintiff's Migraines

Plaintiff argues that the ALJ erred in failing to consider Plaintiff's migraine headache impairment and its effect on his ability to perform a range of sedentary work. (Dkt. No. 13 at 6.) Plaintiff also claims the ALJ erred in rejecting "uncontroverted evidence" of the effect of these migraines. *Id*. The Commissioner contends that the ALJ properly considered the Plaintiff's complaints and medical evidence of migraines and the RFC reflects that consideration. (Dkt. No. 14 at 5-8.[3]) The Court agrees with the Commissioner.

The ALJ found Plaintiff's migraines to be a "severe" impairment at step two of the sequential evaluation. (T. at 17-18.) The ALJ then considered Plaintiff's migraines in the context of his RFC finding, noting that the medical evidence documented treatment for migraines. (T. at 19.) Specifically, Plaintiff received prescriptions for Maxalt[4] for his migraines from primary care providers at Mexico Family Health Center. (T. at 19, 46, 185, 366-67, 371,

---

[3]  Citations to page numbers in the Defendant's brief reference the actual page number in the brief, not the page number assigned by the Court's electronic filing system.

[4]  Maxalt is a medicine used to treat migraine headaches with or without visual, hearing or movement disturbances. (*See* www.pdrhealth.com/drugs/maxalt, last visited March 17, 2015.)

373-74.) The ALJ considered the evidence of record pertaining to Plaintiff's migraines and other impairments, and concluded that Plaintiff retained the capacity for a reduced range of sedentary work, specifically including no kneeling or crawling; only occasional climbing, stooping, crouching, and balancing; avoiding concentrated exposure to pulmonary irritants and workplace hazards; and allowing the ability to sit and stand at will. (T. at 18-21.)

Of note, none of the primary care providers who treated Plaintiff for migraines provided a source statement. (*See* T. at 365-381.) There is no indication in the primary care providers' treatment notes of any limitations whatsoever, let alone any limitations related to the migraines. *Id*. While several encounter treatment notes indicate "migraines" in the Plaintiff's medical history, and list the medication Maxalt as being prescribed to take as needed, many of the notes indicate he was not in acute distress. (T. at 366-68, 370-74, 377-78, 380.) There is one notation dated September 16, 2003, indicating photophobia, nausea, and throbbing related to the migraines, but the record then notes only stomach pain as acute, and knee, back, and shoulder pain as chronic. (T. at 377.) Additionally, where the provider noted Plaintiff's pain complaints in other treatment records, only complaints related to chest, back, knees, shoulder, and stomach are documented. (T. at 367, 369, 373, 377.) There is no medical evidence in the primary care providers' records or any other records of any limitations related to the migraines. (*See* T. at 365-381.)

Consultative examiner Dr. Kalyani Ganesh noted Plaintiff's complaints regarding his migraines and concluded that Plaintiff had no limitations sitting and using his upper extremities, and only moderate limitations standing, walking, and climbing. (T. at 570-73.) Dr. Ganesh did not find any other limitations. *Id*. The opinion and report of a consultative physician may

9

constitute substantial evidence to contradict the opinion of a treating physician. 20 C.F.R. § 404.1527(d); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Here, however, there is absolutely no contradiction of any treating physician's opinion regarding how Plaintiff's migraines allegedly limit his functional abilities since no treating physician commented on it. Instead, Plaintiff's treating physicians' opinions only addressed his limitations related to his orthopedic problems which the ALJ considered when determining Plaintiff's RFC. (T. at 20-21.) *See also* T. at 329, 333, 334 (partial loss of use right leg; Plaintiff can do sedentary work); T at 594, 596, 600, 604 (temporary partial impairment low back); T. at 616, 621, 623, 625, 627, 629 (temporary impairment low back).

Plaintiff has failed to satisfy his burden of proving that his migraines resulted in any greater limitations than those already included in the ALJ's RFC finding. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (plaintiff retains the burden of proof through step four of the sequential evaluation); *Reynolds v. Colvin*, 570 Fed. Appx. 45, 47 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Proper v. Astrue*, Civ. No. 6:10-cv-01221 (GTS/DEP), 2012 WL 1085812, at *13 (N.D.N.Y. Feb. 28, 2012), *adopted by* 2012 WL 1085810 at *4 (N.D.N.Y. March 30, 2012) ("The plaintiff bears the burden to show that her RFC is more limited than that found by the ALJ.") (citations omitted).

Plaintiff admitted that medications were helpful for his migraines, including Maxalt

10

(which "takes the edge off" and sometimes reduced the duration as well), and Tylenol, which would sometimes stop the migraine if he could "catch it early," but he alleged that he still sometimes needed "two days of holing up in a dark room," up to three or four times per month. (Dkt. No. 13 at 6; T. at 46, 179, 188, 570.) However, Plaintiff does not provide any medical opinion or other medical evidence that would support his contention. (Dkt. No. 13 at 6.) Instead, Plaintiff's only "uncontroverted evidence" regarding claimed migraine limitations are his assertions as contained in reports he completed in connection with his application for disability benefits, as he reported to the consultative examiner, and as he alleged during the December 18, 2009, administrative hearing which postdated his September 30, 2009, date last insured. (Dkt. No. 13 at 6.) *See also* T. at 45-46, 179, 188, 570.

The ALJ considered Plaintiff's allegations concerning his migraines and properly found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (T. at 18-19.) *See also* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996). Notably, Plaintiff does not contest this credibility finding. The Commissioner was not obligated to accept Plaintiff's testimony about his complaints and restrictions without question. "It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted).

Aside from taking Maxalt as needed and as prescribed by his primary care provider, Plaintiff does not allege that he received any specialized treatment for his migraines, and he had not undergone testing concerning migraine complaints in many years. (T. at 19, 46, 185, 188

11

("last was tested about 15 years ago with an EEG"), 570 ("had testing done years ago"), 210.) A claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." S.S.R. 96-7p, 1996 WL 374186, at *7; 20 C.F.R. § 404.1529(c)(3); *Penfield v. Colvin*, 563 Fed. Appx. 839, 840 (2d Cir. 2014) (finding conservative treatment regimen among the factors supporting ALJ's credibility determination).

In addition, Plaintiff admitted that he had migraine headaches since he was a "kid." (T. at 188.) Despite this apparently long-standing condition, Plaintiff maintained employment as an adult, including maintenance work at a restaurant in 2004 at the substantial gainful activity level, a job which he allegedly left due to orthopedic injuries, not migraines. (T. at 19, 35, 167-73, 179-81.) Accordingly, the ALJ correctly did not credit Plaintiff's unsupported allegations regarding the frequency, duration, and functional limitations resulting from his migraines.

Thus, the ALJ properly evaluated all of the relevant medical and other evidence to form an assessment of Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1527(e)(2), 404.1545(a)(3), 404.1546(c); S.S.R. 96-5p, 1996 WL 374183 (S.S.A. July 2, 1996). Here, the evidence of record supports the ALJ's decision that Plaintiff's impairments, singly or in combination, did not preclude him from performing a range of sedentary work with appropriate exceptions. (T. at 18.) Accordingly, the Court finds no error regarding the ALJ's RFC determination, and specifically finds no error in the RFC determination as it relates to Plaintiff's complaints of migraine headaches.

### C. Step Five Determination

Plaintiff challenges the ALJ's step five determination which he claims was based upon incomplete hypothetical questions asked of the vocational expert since the ALJ did not include

the alleged limitations caused by Plaintiff's migraines. (Dkt. No. 13 at 6-7; T. at 22-23.) The Commissioner contends that the ALJ properly included the limitations, accepted as true by her as set forth in her RFC finding, in the hypothetical questions posed to the vocational expert. (Dkt. No. 14 at 8-10.) The Commissioner is correct and the Court finds no fault with the ALJ's step five determination.

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable Medical-Vocational Guidelines (the "grids"). *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)). The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience. *Id*. "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." *Id*.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at step five to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a). In making this determination, the ALJ may apply the grids or consult a vocational expert. *See Rosa*, 168 F.3d at 78; 20 C.F.R. pt. 404, subpt. P, App. 2. If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).

However, if a claimant suffers from nonexertional impairments that "significantly limit

the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (citing *Bapp*, 802 F.2d at 605). The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004 WL 1144059, at *6, 2004 U.S. Dist LEXIS 5125, at * 18 (N.D.N.Y. Mar. 22, 2004). A nonexertional limitation is one imposed by the claimant's impairments that affect his ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); 20 C.F.R. § 404.1569a(c)). A nonexertional impairment requiring the testimony of a vocational expert has more than a negligible impact on a claimant's ability to perform the full range of work. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (citing *Zabala*, 595 F.3d at 411). An impairment is not negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id*. (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids). Nonetheless, the existence of nonexertional limitations does not automatically preclude reliance on the Medical-Vocational Guidelines, or require that the ALJ consult a vocational expert. *Zabala*, 595 F.3d at 411. Where the claimant's nonexertional limitations do not result in an additional loss of work capacity, an ALJ's use of the Medical-Vocational Guidelines is permissible. *Id*.

Here, nevertheless, the ALJ properly obtained the testimony of a vocational expert to determine whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and established RFC. (T. at 22-23, 51-62.) The vocational expert clearly opined that there were at least three jobs in the national economy that Plaintiff could perform considering his limitations set forth in the RFC. (T. at 53-55.) In her hypothetical questions to the expert, the ALJ correctly included the limitations found to be based upon substantial evidence. *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983) (ALJ properly relied on vocational expert's testimony since the hypothetical was based upon the ALJ's RFC assessment, which was supported by substantial evidence). In this case, the ALJ asked the vocational expert appropriate hypothetical questions which included the limitations in the RFC as determined by the ALJ to be based upon substantial evidence. (T. at 52-55.) Because, as determined above, the ALJ's RFC finding was based upon correct legal principals and substantial evidence, and the ALJ relied upon the testimony of a vocational expert who was asked hypothetical questions that incorporated Plaintiff's established RFC, I find the ALJ's decision that Plaintiff was not under a disability within the meaning of the Social Security Act was proper. 20 C.F.R. § 416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's motion for judgment on the pleadings be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: March 18, 2015
      Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge